IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| MC MACHINERY SYSTEMS, INC., a Delaware corporation, | Case No. 20-cv-1365 |
| Plaintiff, | Judge Robert M. Dow, Jr. |
| v. | Magistrate Judge Maria Valdez |
| MODERN MOLD CORPORATION, an Ohio corporation, | |
| Defendant. | |

**MODERN MOLD CORPORATION'S OPPOSITION TO
PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO COMPEL**

MC Machinery Systems, Inc. ("MCM") has filed its Motion to Compel (the "MCM Motion" or "MCM Mot.") (ECF 59), not because there are legitimate discovery disputes that require court intervention, but because it seeks to distract from its discovery failures set forth in Modern's Motion to Compel (the "Modern Motion") (ECF 51). Rather than meet and confer in good faith, MCM cut off communication before the parties had fully discussed the issues raised in the MCM Motion or determined if an actual dispute existed. Indeed, when pressed by Modern Mold Corporation ("Modern") on this very issue, MCM capitulated on two of the four issues, confirming the MCM Motion is premature, misleading, and a blatant display of improper gamesmanship. Thus, the Court should deny the MCM Motion and award Modern the costs and fees it incurred in responding to it.

## BACKGROUND

The parties agree on the fundamental facts of this case. This case arises from MCM's sale of a Mitsubishi EA12PS sinker EDM machine (the "Subject EA12"); the Subject EA12's defective

1

performance; MCM's replacement of the Subject EA12 with a Mitsubishi EA28VM-AFP80 sinker EDM machine (the "Subject EA28") for a loaner period;[1] the Subject EA28's defective performance; and MCM's removal of the Subject EA28 from Modern's facility. (Modern's Ans. and Counterclaims (ECF 28) 9-10; MCM Mot. 2-3.)

The MCM Motion, however, misstates several key points. From time of the Subject EA28's installation, the Subject EA28 experienced performance issues. (Modern's Ans. and Counterclaims (ECF 28) 11-13.) MCM returned to Modern's facility multiple times to address the issues, and, each time, MCM informed Modern that the issues had been corrected and told Modern to hang on to the machine. (*Id*.) And each time, those issues resurfaced soon afterward. (*Id*.) Only after these repeated failures did MCM did ask for the return of the Subject EA28 in November 2019, a year and a half after the loaner period ended. (Order on Pl.'s Motion for TRO and for Preliminary Injunction (ECF 21) 1.) Modern agreed to return the Subject EA28, but only after it was tested in anticipation of litigation arising from its defective performance. (*Id*. 1-2.) Before the testing could occur, however, MCM filed this lawsuit. (*Id*.) Shortly after MCM filed the suit, the testing was completed (to the extent it could be completed given the issues arising during the testing), and Modern returned the Subject EA28 to MCM, rendering the Motion for TRO and Preliminary Injunction moot. (*Id*.)

As the parties moved into discovery, contrary to MCM's assertion that Modern has produced only 40 documents (MCM Mot. 4), Modern produced over 1,600 pages of documents as part of its mandatory initial disclosure, *December 4, 2020 Email Correspondence attached as* ***Exhibit A***.

---

[1] Modern did not request the loaner period; the loaner period was proposed by MCM.

On March 25, 2021, MCM filed a motion seeking leave to file its Second Amended Complaint (the "Proposed SAC"). (ECF 38.) The Proposed SAC adds counts for fraudulent misrepresentation and fraudulent inducement. MCM bases these new counts on a host of new allegations claiming that Modern permitted MCM to place the Subject EA28 at its facility but that Modern never had any intention of purchasing it, having already begun pursuing the purchase of a Charmilles machine to replace the Subject EA12.[2] (Proposed SAC ¶¶ 4-8.) Modern objected to this proposed amendment as being untimely, futile, and prejudicial (ECF 46), and the Court has not yet ruled on whether MCM will be permitted to file the Proposed SAC.

In the interim, the parties have engaged in discovery. On April 27, 2021, Modern served its responses to MCM's Interrogatories and Requests for Production ("RFPs"). *Modern's Ans. to Interrogatories attached as* **Exhibit B**; *Modern's Resp. to Req. for Prod. attached as* **Exhibit C**. In response, MCM requested a meet-and-confer on several interrogatories and RFPs. *May 2021 Email Chain attached as* **Exhibit D**. During that conference, Modern maintained its various objections, but agreed to supplement most of the responses in dispute so that the parties could avoid court intervention. *Id*. Of the few remaining issues, as set forth more fully below, Modern did not refuse to supplement. *Id*. Rather, Modern laid out its position and invited clarification and input from MCM. *Id*. Modern also assured MCM that it was working diligently and would provide supplemental discovery responses and production documents in short order. *Id*.

Instead of responding or waiting for Modern's supplemental responses and production, MCM filed its Motion on May 28, 2021. (ECF 59.) Then, as promised, on June 11, 2021, Modern provided its supplemental discovery responses and production, the latter of which contained nearly

---

[2] By arguing that Modern's purchase of the Charmilles machine necessarily means that it did not intend to purchase the Subject EA28, MCM takes the absurd position that a shop like Modern cannot have more than one EDM machine. On the contrary, shops such as Modern can have (and do have) multiple EDM machines.

2,300 pages of documents. *June 11, 2021 Email Correspondence attached as* **Exhibit E**; *Modern's Supp. Ans. to Interrogatories attached as* **Exhibit F**; *Modern's Supp. Resp. to Req. for Prod. attached as* **Exhibit G**. Moreover, Modern informed MCM that it still had a few documents to review and that it would produce those documents in short order. **Ex. E**. Thus, far from "fighting responding to legitimate discovery requests," as the MCM Motion mischaracterizes Modern's actions (MCM Mot. 4), Modern has been moving diligently forward to fulfill its discovery obligations.

Despite the pending MCM Motion, Modern continues to try to resolve the issues without further court intervention. *June 2021 Email Chain attached as* **Exhibit H**. In doing so, the parties have been able to resolve two of the four issues in the MCM Motion, establishing that the parties had not completed the meet-and-confer process prior to MCM filing its Motion being filed and that MCM's prior participation in the meet and confer discussions had not been done in good-faith to resolve the alleged discovery issues. *Id*. Moreover, MCM's continued pursuit of the two remaining issues in the MCM Motion is done in bad faith. *Id*.

## ARGUMENT

The scope of discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). To that end, parties must engage in discovery in good faith, without gamesmanship. *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1026 (N.D. Ill. 2017). In fact, "gamesmanship is antithetical to the principles of discovery under the Federal Rules." *Hobley v. Burge*, No. 03 C 3678, 2003 WL 22359520, at *2 (N.D. Ill. Oct. 15, 2003). As detailed below, the MCM Motion is pure gamesmanship, and the Court should deny it.

I.   **MCM Is Not Entitled To Additional Documents In Response To RFP 12.**

RFP 12 seeks documents and communications "between [Modern] and the manufacturer or supplier to [Modern] of any Charmilles or Georg Fischer branded or manufactured electrical discharge machines including quotations, orders, invoices, service records, delivery records, installation records and specifications." In its Response to RFP 12, Modern objected, but agreed to produce the sales documentation for the sole Charmilles machine it purchased during the requested period. *Ex. C* at No. 12.

Unsatisfied, MCM asserted – during the parties' preliminary meet and confer – that it was entitled to all documents related to all machines for two reasons: MCM is entitled to investigate all potential sources for MCM's representations made to Modern comparing MCM's machines to other machines or standards;[3] and MCM is entitled to discovery on the new allegations in the Proposed SAC. *Ex. D*. With respect to the first reason, Modern agreed to produce all documents for standards and machines at Modern's facility up until the time the representations were made (*i.e.*, the sale of the Subject EA12 and the replacement with the Subject EA28). *Id*. Because, as verified by the sales documentation, Modern did not purchase the new Charmilles machine until after the Subject EA28 was installed at its facility (and after the misrepresentations were made by MCM to Modern), this rationale does not justify the production of documents related to the Charmilles machine purchased after the misrepresentations made to Modern by MCM. *Id*. With respect to the second reason, Modern reminded MCM that the Court has not yet granted leave to file the Proposed SAC, so those claims and the facts underlying them are not part of this case and, thus, not subject to discovery. *Id*.

---

[3] At this point in time, Modern had not even purchased, nor did it possess, the Charmilles machine. Rather, MCM compared its EA Series of machines to other machines on site at Modern at that time and to other machines available in the industry.

> In its Supplemental Response to RFP 12, Modern reiterated its position:
>
> Modern objects to this Request as overly broad to the extent it seeks documents related to other EDMs at Modern's facility after late 2017. To the extent MCM compared the performance of the EA12 or the EA28 to other machines at Modern's facility in writing, it did so during the time period that it sold the EA12 to Modern in 2017 [and up through 2017 when MCM replaced it with the EA28 at the beginning of 2018]. Thus, information about machines at the facility after this period is not relevant to any issue in this case. With respect to machines at Modern's facility at the time MCM sold it the EA12 [and replaced it with the EA28], Modern agrees to conduct a reasonable search and to produce responsive, non-privileged documents in its possession, custody, or control.

*Ex. G* at No. 12.

In the MCM Motion, MCM limited its request to only the documents related to the new Charmilles machine. (MCM Mot. 9.) In an attempt to justify the narrowed request, it again pointed to the allegations and claims in the Proposed SAC. But, because it appeared to understand that such a reason was not supportable (and was premature), it added a new purported reason for why it sought the documents: mitigation. (*Id*.)

With respect to the first asserted basis for why it believes it is entitled to documents related to the Charmilles machine (*i.e*., the Proposed SAC), the very case on which MCM relies establishes why MCM is not entitled to the discovery it seeks. In *Rogers v. Baxter Int'l Inc*., the Court held that discovery "must be germane to a **specific claim or defense asserted** in the pleading." No. 04 C 6476, 2007 WL 7263294, at *2 (N.D. Ill. Feb. 9, 2007). Here, the Court has not granted MCM leave to file its Proposed SAC. Thus, the claims it contends supports discovery of the Charmilles machine are not part of this case and not the proper subject of discovery.

With respect to mitigation, MCM fails to assert how the sales documentation, which Modern agreed to nonetheless produce (in an attempt to avoid Court intervention) and which establishes the purchase date and price, is insufficient in showing how Modern mitigated its damages by purchasing replacement equipment for the defective Subject EA28. MCM offers no

support for its assertion that additional documents related to the negotiations for the purchase of the Charmilles offer any additional insight into mitigation or damages. It offers no support, and cannot, that Modern was required to haggle over the price or obtain the lowest possible price on the market. Thus, MCM has failed to demonstrate how any additional documents (on top of those Modern is producing regarding the Charmilles machine) are relevant or will lead to the discovery of admissible evidence.

II.  **MCM Is Not Entitled to Expand The Scope Of Discovery Solely For Its Own Benefit.**

RFP 16 seeks all documents and communications related to Modern's contact with MCM's dealers, distributors, representatives, employees, and/or customers. ***Ex. C** at No. 16*. In its original response, Modern objected to the request on breadth and relevance grounds. *Id*. During the parties' meet and confer, Modern offered to respond to a narrower subset of the requested documents, namely all documents and communications related to this case. ***Ex. D***. MCM insisted that it was entitled to all documents and communications related to any machine in the EA Series. *Id*. Modern reminded MCM that MCM repeatedly objected to this broader scope in responding to Modern's discovery and in opposing Modern's Motion. *Id*. In an attempt to resolve the dispute, Modern stated that it would agree to produce the expanded scope of documents if MCM also agreed to do so. *Id*. MCM did not respond and instead filed its Motion. On June 15, 2021, after Modern continued the meet and confer communication to resolve the issue without further court intervention, MCM finally agreed that it would only seek documents with respect to the broader scope if the Court grants Modern's Motion. ***Ex. H***. Thus, this issue is no longer in dispute.

III.  **Modern Has Complied, And Is Complying, With Its Obligations With Respect To RFP 28.**

RFP 28 seeks "all documents and communications including business cards relating to the relationship between (i) Buholzer and MMS and (ii) WSM and MMS." ***Ex. C** at No. 28*. Modern

7

has not refused to produce documents responsive to this request. In contrast, it agreed to produce all business cards and similar marketing materials in its possession. ***Ex. D***. And it has already produced (and agreed to produce, if they exist, additional) email correspondence with Mr. Buholzer in response to other requests. *Id*. Modern then sought to cooperate further with MCM by asking what other types of documents it seeks:

> Modern has agreed to produce any business cards or similar marketing materials it received. The request, however, is vague and confusing. It seeks documents "related to the relationship" between Buholzer/WSM and MCM. What other kinds of documents would be responsive here? What is it MCM wants?

*Id*. MCM did not respond and instead filed its Motion. Only after filing its Motion did MCM offer clarity on June 15, 2021 regarding what it seeks. ***Ex. H***. Modern can now search for any additional responsive documents should they exist. Thus, this issue is no longer in dispute.

### IV. Modern Has Agreed To Fully Respond To Interrogatories 3-5 and RFP 6, All Related To Damages.[4]

Interrogatories 3 and 4 seek information related to the amount of damages Modern seeks, the method of calculating those damages, the date(s) on which Modern incurred those damages, and the itemized listing of Modern's payments to third parties, out-of-pocket expenses, and elements of damages. ***Ex. B***.

Contrary to MCM's assertion, Modern has responded to these interrogatories as follows:

> [B]ased on information known to date, and subject to Modern's continuing investigation, assessment, and computation, Modern estimates the damages arising from MCM's misconduct include, but are not limited to, the following:
>
> | | |
> |---|---|
> | Repair and replacement of damaged products | $625,000 |
> | Overtime | $46,250 |
> | Assembly charges | $750 |
> | Lost business | $305,000 |
> | Test burns | $24,000 |

---

[4] MCM also includes Interrogatories 6 and 9 in its Motion, arguing those Interrogatories relate to the "factual basis" for damages (MCM Mot. 14.) MCM does not specify how the responses to these two particular Interrogatories are deficient or even assert that they are deficient.

| | |
|---|---|
| Research | $2,655 |
| Additional cost in purchasing alternate EDM | $75,000 |
| Training; freight; moving and storage; replacement component parts | $41,275 |
| Estimated Total | $1,119,930 |

Modern further states that its damages are expected to include attorneys' fees and costs, the total value of which has yet to be determined. Investigation continues. *Id*.

Similarly, Interrogatory 5 seeks information regarding the specifics of Modern's claims for lost profits, including the details of all orders lost or cancelled or received and not filled due to the defective Subject EA28. *Id*. In response, Modern answered that, "based on the analysis of resources diverted to the Machine and the issues arising from it, it lost approximately $305,000 from at least three customers." *Id*.

Finally, RFP 6 requests all documents related to Modern's damages. ***Ex. C** at No. 6*. Modern agreed to produce those documents. *Id*.

During the parties meet-and-confer, Modern never refused to produce documents or responsive information. ***Ex. D***. In contrast, Modern stated that it was investigating and that it would supplement accordingly. *Id*. Modern supplemented its response to all three interrogatories consistently with its statements during the meet-and-confer:

> Modern anticipates that lost profits will be the subject of expert discovery. Modern, however, will perform a reasonable search and will produce relevant non-privileged documents from which responsive and properly sought information can be determined (as permitted pursuant to Federal Civil Rule 33).

***Ex. F** at No. 3-5*.

MCM filed its Motion anyway.

On June 11, 2021, Modern produced documents, including those related to damages. ***Ex. E***; ***Ex. H***. Moreover, in its upcoming supplemental production, Modern will produce more documents related to damages. *Id*. MCM, however, refused to withdraw its Motion. ***Ex. H***.

9

In its Motion, MCM offers three justifications for its request. *First*, it states that Modern has objected to the requests as premature and that Modern is withholding documents until expert discovery. (MCM Mot. 14-15.) This assertion is blatantly false. Modern has not asserted anywhere that it is withholding documents until expert discovery. On the contrary, Modern has stated that, while the specific calculation and criteria of lost profits will likely require expert testimony, Modern will produce the underlying documentation that justifies the claim and on which any expert would rely. **Ex. H**.

*Second*, MCM states that Modern has refused to produce all documents responsive to RFP 6 and that it has, instead, limited its response to documents "sufficient" to establish damages. (MCM Mot. 14-15.) Again, this assertion is blatantly false. In its Response to RFP 6, Modern agreed to search for and produce all responsive documents. **Ex. C** at No. 6. Similarly for its responses to Interrogatories 3-5, Modern asserted that it would search for and produce documents from which such information could be ascertained. **Ex. F** at No. 3-5; **Ex. H**. Federal Rule of Civil Procedure 33 permits this course of action. Thus, MCM's second justification fails.

*Third*, MCM complains about the delay in production and seeks a date certain for Modern to complete its supplementation. (MCM Mot. 14-15.) MCM, however, offers no case law supporting its assertion that the delay is unreasonable, nor that it has suffered or will suffer prejudice because of the delay. It offers no evidence that Modern has been purposefully attempting to delay discovery or doing anything other than working diligently to respond and produce. Coupled with the fact that, since the MCM Motion's filing, Modern has already produced some of the documents at issue, MCM cannot support its claim of unreasonable delay.

MCM's case law fares no better. In *Fields v. Gen. Motor Corp.*, the Court compelled discovery because the party opposing the motion to compel had refused to produce documents.

No. 94 C 4066, 1996 WL 14040, at *4 (N.D. Ill. Jan. 14, 1996). As established above, Modern has not made such a refusal. Rather, Modern has agreed to produce the requested information. Thus, *Fields* is inapposite. MCM has failed to demonstrate how an order compelling discovery on this issue is warranted.

**V.     The Court Should Deny The MCM Motion Because MCM Has Failed To Meet And Confer In Good Faith.**

To "curtail undue delay and expense in the administration of justice," Local Rule 37.2 requires the parties to meet and confer regarding discovery disputes and to engage in "good faith attempts to resolve differences." Failure to do so prior to filing a motion to compel can result in denial of the motion. *Evolve Biosystems, Inc. v. Abbott Lab'ys, Inc.*, No. 19 CV 5859, 2020 WL 7398784, at *7 (N.D. Ill. Dec. 17, 2020).

Here, MCM filed its Motion while the parties were still engaging in meet and confer discussions which were, and had, resolved the bulk of issues between them up to the point of the filing of MCM's Motion. As to the four remaining issues, the parties had not yet reached an impasse. The fact that the parties were able to continue their meet and confer obligation, and were able to resolve two more of the four remaining issues, bolsters the conclusion that the parties were not yet in need of court intervention. Thus, in addition to the reasons set forth above, the Court should deny the MCM Motion on this basis.

**VI.    Modern, Not MCM, Is Entitled To Recover Its Fees.**

Fed. R. Civ. P. 37(a) prohibits the movant's recovery of fees if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action . . . ." In contrast, if the Court denies a motion to compel, the Court must award the party opposing the motion recovery of its fees unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a).

11

In this case, as set forth above, MCM filed its Motion before the parties had finished discussing the disputes and, thus, "before attempting in good faith to obtain the disclosure or discovery without court action." Thus, MCM cannot recover its fees.

Moreover, the MCM Motion was premature and unjustified. It was simply an exercise in pure gamesmanship. Thus, not only should the Court deny the MCM Motion, but it must, upon doing so, award Modern its fees.

## CONCLUSION

For the reasons set forth above, Modern respectfully requests that this Court deny the MCM Motion. In addition, Modern requests that the Court order MCM to pay Modern's expenses, including attorney's fees, incurred in opposing the MCM Motion.

Dated: June 16, 2021              Respectfully Submitted,

**MODERN MOLD CORPORATION**

*/s/ Rebecca L. Dircks*
Rebecca L. Dircks
**Benesch Friedlander Coplan & Aronoff LLP**
71 S. Wacker Drive, Suite 1600
Chicago, IL 60602
Tel.: 312.212.4949
*rdircks@beneschlaw.com*

H. Alan Rothenbuecher (admitted *pro hac vice*)
**Benesch Friedlander Coplan & Aronoff LLP**
200 Public Square, Suite 2300
Cleveland, OH 44114
Tel.: 216-363-4500
*arothenbuecher@beneschlaw.com*

*Counsel for Defendant/Counter-Plaintiff*
*Modern Mold Corporation*

## CERTIFICATE OF SERVICE

I, Rebecca L. Dircks, certify that I served a true and correct copy of the foregoing **MODERN MOLD CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** upon the persons named below via the Court's electronic filing system and via e-mail on June 18, 2021.

> Rein F. Krammer
> Masuda, Funai, Eifert & Mitchell, Ltd.
> 203 North LaSalle Street, Suite 2500
> Chicago, Illinois 60601
> rkrammer@masudafunai.com

/s/ *Rebecca Dircks*
Rebecca L. Dircks
